IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Criminal No. 21-13-1** |
| | ) | |
| KAYLOR BROWN | ) | |

## Opinion and Order on Pretrial Motions

Defendant Kaylor Brown is charged in Count 1 of a three-count Indictment with conspiracy to distribute 500 grams or more of cocaine, 28 grams or more of cocaine base, and 40 grams or more of fentanyl, in violation of 21 U.S.C. § 846, from January 2020 to January 2021. ECF No. 3.  Presently before the Court are the following pretrial motions filed by Mr. Brown: Motion for a Bill of Particulars, ECF No. 122; Motion for Production of Exculpatory Evidence and Impeachment Evidence, ECF No. 123; Discovery Motion, ECF No. 124; Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609, ECF No. 128; Motion for a Pretrial James Hearing, or, in the Alternative, for an Order Compelling the Government to Make a Pretrial Proffer, ECF No. 129; Motion to Reveal Identity of Confidential Informant, ECF No. 130; and Motion to Preserve Law Enforcements' Rough Notes, ECF No. 131.  The government has filed an Omnibus Response to said Motions, to which the defense has filed a Reply.  ECF Nos. 132 and 138.

## I.       Motion for a Bill of Particulars

Mr. Brown has filed a motion requesting that the Court issue an Order directing the government to file a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).  ECF No. 122.  Federal Rule of Criminal Procedure 7(f) provides:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment, or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).  A bill of particulars is a "'formal, detailed statement of the claims or

charges brought by a plaintiff or a prosecutor.'"  United States v. Urban, 404 F.3d 754, 771-772

(3d Cir. 2005) (quoting BLACK'S LAW DICTIONARY 177 (8th ed. 2004)).  "The purpose of a bill of

particulars is "to inform the defendant of the nature of the charges brought against him, to

adequately prepare his defense, to avoid surprise during the trial and to protect him against a

second prosecution for an inadequately described offense."  United States v. Addonizio, 451

F.2d 49, 63-64 (3d Cir.1972).  "Only where an indictment fails to perform these functions, and

thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to

prejudicial surprise at trial,' will we find that a bill of particulars should have been issued."

Urban, 404 F.3d at 771-772 (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir.1989)

(citing Addonizio, 451 F.2d at 62-63)).

     With respect to a charged conspiracy, the United States Court of Appeals for the Third

Circuit "has held that a defendant is not entitled to a list of uncharged overt acts and uncharged

criminal conduct, nor is he entitled to a list of the identities of Government witnesses."  United

States v. Cardillo, No. CRIM.A. 13-121-2 JBS, 2015 WL 3409324, at *5 (D.N.J. May 27, 2015)

(citing United States v. Di Pasquale, 740 F.2d 1282, 1294 (3d Cir.1984) (other citations

omitted)).  A "request for the 'when, where and how' of any overt acts not alleged in the

indictment is "tantamount to a request for 'wholesale discovery of the Government's evidence,'

which is not the purpose of a bill of particulars under Fed. R. Crim. P. 7(f)."  United States v.

Armocida, 515 F.2d 49, 54 (3d Cir.1975) (quoting Addonizio, 451 F.2d at 64).  A "bill of

particulars is not a discovery tool by which defendants obtain disclosure of every detail of the

theory and preparation of the Government's case."  Cardillo, 2015 WL 3409324, at *5.

Mr. Brown "seeks particulars of any and all alleged agreements and acts, and the date on which those occurred that the government will offer in evidence at trial that are not specific in the indictment." ECF No. 122, at ¶ 3.  He argues that a bill of particulars is warranted in this case with respect to both timing and means.  As to "timing," Count One of the Indictment alleges a conspiracy occurring from January 2020 to January 2021.  ECF No. 3.  Mr. Brown points out that the only other identified date contained in the Indictment is August 11, 2020, occurring in Counts Two and Three with respect to co-defendant Anthony Pietrantonio.  Mr. Pietrantonio was arrested on August 11, 2020, which Mr. Brown argues raises the question of how the conspiracy could continue as a conspiracy after the date of Mr. Pietrantonio's arrest through January 2021. ECF No. 122, at ¶ 11 ("entirely unclear how the conspiracy persisted after that date until January 2021").  As to "means," Mr. Brown argues that it is unclear what overt acts he is alleged to have engaged in while he was housed in his prison cell, and what overt acts he is alleged to have engaged in that would indicate that he entered into an agreement with other alleged co-conspirators.  Mr. Brown also argues that it is unclear from the Indictment how the various drug amounts alleged in the Indictment were reasonably foreseeable to Mr. Brown while he was in prison.

The allegations of Count 1 are sufficiently worded to give Mr. Brown notice of the essential facts supporting the alleged criminal conspiracy.  The conspiracy charge in Count 1 of the Indictment provides sufficient information regarding the nature of the charge brought against Mr. Brown, and further, provides sufficient information to permit Mr. Brown to adequately prepare a defense.  Addonizio, 451 F.2d at 63-64.  Count 1 alleges a year-long conspiracy among Mr. Brown, his two co-defendants, and persons known and unknown to the grand jury.  ECF No. 3, at 1.  The aim of the conspiracy, as stated in Count 1, was to unlawfully distribute and possess

with the intent to distribute the controlled substances, cocaine, crack cocaine, and fentanyl.  Id.

Mr. Brown's request for answers to his questions regarding "timing" and "means" are in fact

direct discovery requests, "which is not the purpose of a bill of particulars."  Armocida, 515 F.2d

at 54.  In addition, the government has provided a significant amount of Rule 16 discovery

materials, as well as orally providing to Mr. Brown and his counsel the government's detailed

theory of the case.  The information provided by the government adds significant and specific

detail to the conspiracy charge in the Indictment.  The information Mr. Brown possesses is

sufficiently clear to enable him and his counsel to adequately prepare a defense, protect against

double jeopardy, and to avoid unfair surprise at trial.  United States v. Kenny, 462 F.2d 1205,

1212 (3d Cir. 1972) ("motion seeking a bill of particulars is properly denied where the record as

a whole demonstrates that ample opportunity exists for adequate preparation of the defense").

Thus, the Court finds that the Indictment, as supplemented by the government's discovery

material and oral disclosures, informs Mr. Brown of the charges against him and permits him to

adequately prepare his defense.  Accordingly, Mr. Brown's Motion for a Bill of Particulars is

DENIED.

**II.      Motion for Production of Exculpatory Evidence and Impeachment Evidence**

Mr. Brown seeks production of all exculpatory evidence, and all material and information

that may be favorable to him, pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  Mr. Brown

also requests all potential impeachment material pursuant to Giglio v. United States, 405 U.S.

150, 154 (1972).  See also United States v. Perdomo, 929 F.2d 967 (3d Cir. 1991).

"In Brady, the Supreme Court held that due process required that [upon request] the

government produce all "exculpatory" evidence, which includes both '[m]aterials ... that go to

the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment

of the credibility of a crucial prosecution witness.'" United States v. Ramos, 27 F.3d 65, 68 (3d

Cir. 1994) (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir.1992)).  Once a

defendant makes a request for such materials, the government is obligated to disclose such

exculpatory evidence, "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39,

44 (3d Cir. 1983) ("No denial of due process occurs if Brady material is disclosed to

[defendants] in time for its effective use at trial").

The Supreme Court in Giglo extended its ruling in Brady to encompass impeachment

evidence relating to the credibility of a government witness.  Giglio, 405 U.S. at 154.  Any

inducements or rewards given to government witnesses, including but not limited to money,

grants of immunity, plea bargains, promises of leniency or recommendations thereof, or

preferential treatment, would fall under impeachment evidence that must be disclosed under

Brady.  See Higgs, 713 F.2d at 43 ("Evidence that government witnesses have been granted

immunity and/or leniency for their cooperation is clearly relevant on the issue of their

credibility").

In its Response the government indicates that it has met its obligations under

Brady/Giglio.  The government also acknowledges its continuing obligation to provide Mr.

Brown with any additional Brady/Giglio material sufficiently in advance of trial for its effective

use by Mr. Brown.  In Mr. Brown's Reply, he reads the government's Response as leaving open

the possibility that the government possesses Brady materials that it has not yet turned over.  The

government states that it intends to provide "whatever Brady/Giglio information that *may* exist

and that has not already been disclosed." Govt Resp. 5 (emphasis added).  The government is

referencing materials that "may" exist; not materials the government presently possesses.  To the

extent that the government possesses Brady materials it has not yet turned over, Mr. Brown's

5

Motion will be granted, and the government will be ordered to timely disclose such material.  To

the extent Mr. Brown seeks a ruling from this Court ordering the government to disclose to the

defense Giglio material at least thirty days prior to trial, the Motion will be denied, without

prejudice.  The timing of disclosure of such material is presently set for March 6, 2023, fourteen

days before trial.  Accordingly, the Motion for Disclosure of Exculpatory Evidence and

Impeachment Evidence is GRANTED to the extent that the government currently possesses

Brady material that has not been disclosed.  The Motion is otherwise DENIED, without

prejudice.

### III.    Motion for Discovery

In Mr. Brown's Discovery Motion he seeks to compel the disclosure of relevant Rule 16

material, as well as other discovery evidence that may be relevant to his case.  "Rule 16 of the

Federal Rules of Criminal Procedure delineates the categories of information to which

defendants are entitled in pretrial discovery in criminal cases, with some additional material

being discoverable in accordance with statutory pronouncements and the due process clause of

the Constitution."  United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994).  Federal Rule of

Criminal Procedure 16(a)(1) requires the government, when requested by defendant, to disclose,

within proscribed limits, the defendant's oral, written, or recorded statement (Rule 16(a)(1)(A) &

(B)) and the defendant's prior record (Rule 16(a)(1)(D)).  In addition, pursuant to Rule

16(a)(1)(E) ("Documents and Objects"), upon the defendant's request, "the government must

permit a defendant to inspect and to copy or photograph" said documents and objects as set forth

in the Rule.  Fed. R. Crim. P. 16(a)(1)(E).  Similarly, when requested by defendant, the

government must also permit the inspection, copying, or photographing of results or reports of

any physical or mental examinations and scientific tests or experiments.  Fed. R. Crim. P.

16(a)(1)(F).  Finally, when requested, "the government must give to the defendant a written

summary of any [expert] testimony that the government intends to use, . . .  during its case-in-

chief at trial," and the written summary "must describe the witness's opinions, the bases and

reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  In

addition, the government remains under a continuing duty to disclose any additional evidence it

discovers.  Fed. R. Crim. P. 16(c).  "Information Not Subject to Disclosure," is described in Rule

16(a)(2), as follows:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not
> authorize the discovery or inspection of reports, memoranda, or other internal
> government documents made by an attorney for the government or other
> government agent in connection with investigating or prosecuting the case.

Fed. R. Crim. P. 16(a)(2).[1]

As set forth in his Motion, Mr. Brown  requests detailed discovery information from the

government.  The government states that it has complied with its obligations under Rule 16.  The

Court notes that the government must also supplement its Rule 16 disclosures as new

information is learned.  Fed. R. Crim. P. 16(a)(2).  If the government does not turn over certain

requested material under Rule 16, Mr. Brown can seek to compel the government to provide

such material if one of Rule 16's bases for production of the material is established.  Mr. Brown

also may, as he indicates in his Reply, move for the exclusion of later-provided material.

Presently, Mr. Brown does not identify any request for specific material that the government has

declined to produce under Rule 16.  There is no indication that the government is not complying

---

[1]  Rule 16(a)(2) also prohibits "the discovery or inspection of statements made by prospective government witnesses except as provided in [the Jencks Act] 18 U.S.C. § 3500."  Fed. R. Crim. P. 16(a)(2).  Mr. Brown's request for Jencks Act material is addressed separately in this Opinion.

with its discovery obligations.  Accordingly, the Discovery Motion is DENIED, without

prejudice.

**IV.     Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609**

Mr. Brown requests that the Court Order the government to provide him with a written

statement of the government's intent to introduce at trial evidence of other crimes pursuant to

Rule 404(b) and impeachment evidence pursuant to Rule 609.  He requests the government

disclose the written statement thirty days prior to trial.  Finally, Mr. Brown requests a pretrial

hearing to determine the admissibility of any such evidence.

Rule 609 concerns the impeachment of a witness by use of a prior criminal conviction.

Fed. R. Evid. 609.  Federal Rule of Evidence 404(b) is titled "Other Crimes, Wrongs, or Acts,"

and specifies when such evidence is prohibited, when it is permitted, and the prosecution's

obligations to notify the defense that it intends to introduce such evidence.  As to "Prohibited

Uses," Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not

admissible to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character."   Fed. R. Evid. 404(b)(1).  With respect to "Permitted

Uses," Rule 404(b)(2) provides that evidence of prior bad acts "may be admissible for another

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Finally, Rule 404(b)(3)'s

notice requirements, which were amended effective December 1, 2020[2], provide as follows:

---

[2]  Federal Rule of Evidence 404(b) was amended effective December 1, 2020.  According to the Committee Note, and as set forth above, the amendment principally imposes additional notice requirements on the prosecution. The amendment also eliminated the requirement that the defendant must make a request before notice is provided.  Amended Rule 404(b) governs all proceedings commenced December 1, 2020 and thereafter.

> **(3)  Notice in a Criminal Case**.  In a criminal case the prosecutor must:
>
>> **(A)**  provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>>
>> **(B)**  articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>>
>> **(C)**  do so in writing before trial – or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).  In its Response, the government responds that it is aware of its obligations under Rule 404(b) and indicates that it will provide notice of Rule 404(b) and Rule 609 information it intends to introduce at trial in accord with case law indicating a time frame of six to ten days before trial.  Govt Resp. at 5-6.

What constitutes "reasonable notice" depends on "the circumstances and complexity of the prosecution." United States v. Johnson, 218 F. Supp. 3d 454, 462 (W.D. Pa. 2016).  In general, as the government notes, courts have found that, "reasonable notice" under Rule 404(b) is in the range of seven to ten days or one to two weeks prior to trial. United States v. Long-Parham, 183 F. Supp. 3d 746, 750 (W.D. Pa. 2016); United States v. Buckner, 2020 U.S. Dist. LEXIS 5485, at *14–15 (M.D. Pa. Jan. 13, 2020).  However, as cited by the defense, there is recent precedent for ordering disclosure of such evidence thirty days in advance of trial.  Def. Reply at 6 (citing United States v. Coles, 511 F. Supp. 3d 566, 593 (M.D. Pa. 2021)[3]).  Thus, to determine whether disclosure should occur between 10 to 14 days prior to trial or thirty days

---

[3]  In Coles, the District Court concluded: "Given the circumstances and complexity of this prosecution, and the anticipated volume of motions in limine, we will adopt [defendant's] proposal and order the government to notify all defendants whether it intends to offer evidence under Rule 404(b) or Rule 609(b) at least 30 days before trial. United States v. Coles, 511 F. Supp. 3d 566, 593 (M.D. Pa. 2021)

prior to trial depends on "the circumstances and complexity of the prosecution." Johnson, 218 F. Supp. 3d at 462).

Here, Mr. Brown has stated that he intends to challenge the introduction of Rule 404(b) and Rule 609 evidence in a pretrial hearing. The government opposes a pretrial hearing, citing the need for trial context, and thus the government would postpone such a hearing until trial. However in that event, trial would come to a halt, for an undetermined time, while the hearing is conducted. Jurors would be left waiting until they are told that the hearing is resolved, and trial can resume. The government's request to delay a potential pretrial evidentiary hearing on Rule 404(b) and Rule 609 evidence in order to establish trial context is, on the present record, not a justification for denying Mr. Brown's request for a pretrial hearing. Moreover, the United States Court of Appeals for the Third Circuit requires that Rule 404(b) evidence may only be introduced at trial if the government "can demonstrate its admissibility." United States v. Repak, 852 F.3d 230, 241 (3d Cir. 2017). Although the government carries the burden there is no indication that the burden is prejudicial if performed prior to trial. Admissibility of "evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose [that is, the evidence is proffered for a non-propensity purpose]; (2) be relevant; (3) satisfy Rule 403 [in that its probative value must not be substantially outweighed by its potential for causing unfair prejudice]; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 240 (3d Cir. 2010). The timing of disclosure of Rule 404(b) and Rule 609 evidence and uncharged misconduct evidence is currently set for fourteen days prior to trial. This date appears to be sufficiently in advance of trial for the defense to make effective use of the material, and to request an evidentiary hearing prior to trial if necessary. Accordingly, Mr. Brown's Motion for Disclosure

of Rule 404(b) and Rule 609 evidence is GRANTED to the extent that the government must

disclose such material fourteen days prior to trial, and is otherwise denied.

**V.      Motion for a Pretrial <u>James</u> Hearing, or, in the Alternative, for an Order Compelling the Government to Make a Pretrial Proffer**

Mr. Brown requests a pre-trial <u>James</u> hearing to determine whether the government can

introduce statements of alleged co-conspirators against him, pursuant to Federal Rule of

Evidence 801(d)(2)(E) and <u>United States v. James</u>, 590 F.2d 575 (5th Cir. 1979).  "In the Third

Circuit <u>James</u> hearings are accepted but 'carefully considered and sparingly used' because

'control of the order of proof at trial' is within the trial judge's discretion."  <u>United States v.</u>

<u>Escalante-Melgar</u>, No. CR. 16-453 (CCC), 2020 WL 968091, \*13 (D.N.J. Feb. 28, 2020)

(quoting <u>United States v. Cont'l Grp., Inc.</u>, 603 F.2d 444, 456-57 (3d Cir. 1979)).

At this juncture a <u>James</u> hearing is premature.  The Court will provide ample time for Mr.

Brown to object, prior to trial, to the introduction of alleged co-conspirators statements.  At that

time, the government should be prepared to provide a proffer as to the admissibility of such

statements.  Accordingly, Mr. Brown's Motion for a Pretrial <u>James</u> Hearing, or, in the

Alternative, for an Order Compelling the Government to Make a Pretrial Proffer is DENIED,

without prejudice, as premature.

**VI.     Motion to Reveal Identity of Confidential Informant**

Mr. Brown moves to have the government disclose the identity of the confidential

informant or informants in this case.  He argues that such disclosure is necessary and critical to

his defense under the balancing test set forth in <u>Roviaro v. United States</u>, 353 U.S. 53 (1957).  In

<u>Roviaro</u>, the Supreme Court recognized "the Government's privilege to withhold from disclosure

the identity of persons who furnish information of violations of law to officers charged with

enforcement of that law."  <u>Roviaro</u>, 353 U.S. at 59.  "It held, however, that this privilege is not

without limitations. 'Where the disclosure of an informer's identity, or of the contents of his

communication, is relevant and helpful to the defense of an accused, or is essential to a fair

determination of a cause, the privilege must give way.'"  United States v. Jiles, 658 F.2d 194,

196 (3d Cir. 1981) (quoting Roviaro, 353 U.S. at 60-61).

The "burden to demonstrate the need for disclosure rests on the defendant."  United

States v. Johnson, 677 F.3d 138, 143 (3d Cir. 2012) (citing Jiles, 658 F.2d at 197).  "[O]nce a

defendant sets forth a specific need for disclosure the court should balance 'the public interest in

protecting the flow of information against the individual's right to prepare his defense.'"  Jiles,

658 F.2d at 196 (quoting Roviaro, 353 U.S. at 62).   "The result of the balancing will depend

upon the particular circumstances of the case, 'taking into consideration the crime charged, the

possible defenses, the possible significance of the informer's testimony, and other relevant

factors.'"  Jiles, 658 F. 2d at 196 (quoting Roviaro, 353 U.S. at 62).

Mr. Brown argues that he has a specific need for disclosure of the identity of any

confidential informant[4] because such informants are "active participants in the charged crime

and eyewitnesses to events that purportedly support the government's theory of the case."  Def.

Mot. at ¶ 4.  He further argues that

> the informant's testimony is "highly relevant," and represents one of the few
> participants, other than Mr. Brown, in the alleged crime.  [citing Jiles, 658 F.2d at
> 198-99].  Counsel for Mr. Brown believes that the investigation of this case, and
> the evidence to be presented at trial, are based largely on the word and testimony
> of confidential informant(s) that have direct knowledge of the purported
> conspiracy and were actively engaged in it.  Defense counsel assumes that the
> government's theory of the case is that Mr. Brown – while incarcerated in Bureau
> of Prisons' custody – agreed with individuals outside the prison who engaged in
> drug transactions.  Knowing which members of the purported conspiracy intend to
> testify at trial, and make incriminating statements about Mr. Brown's purported
> agreement to distribute controlled substances, is essential to his preparation of a
> defense for trial.  While two members of the alleged conspiracy are named

---

[4]  The Court will refer to a singular "confidential informant," though there may be more than one.

> defendants, the government filed its indictment alleging that Mr. Brown also
> conspired with "persons both known and unknown to the grand jury."

Id.  Mr. Brown concludes that he will be "unduly prejudiced if the confidential informant's

identity is not given prior to trial, as the confidential informant's identity and an opportunity to

investigate further is essential to his defense and a fair determination of the case against him."

Id. at ¶ 5.  In his Reply Brief, Mr. Brown reiterates that the confidential informant "was an active

participant in the crime and an alleged eyewitness to events that purportedly support the

government's theory of the case, [and therefore] the identity of the informant is necessary to

ensure a fair trial."  Reply Br. at 10.

Before the Court applies the Roviaro balancing test, Mr. Brown must first demonstrate a

specific need for disclosure.  Mr. Brown has not met this burden.  He relies heavily on his

assertion that the confidential informant was involved in the charged criminal activity and was an

eyewitness to the criminal activity.  He describes the informant's potential testimony as being

highly relevant, explaining that an informant who participated in the crime is also likely an

eyewitness that can testify as to the events of the crime.  This description is generic insofar as it

would apply to any informant, or co-conspirator, who was active in the crime.  Mr. Brown's

request for disclosure of the informant's identity is no different than a premature defense request

for a list of government witnesses.  The confidential informant is also not the only active actor

involved in the alleged conspiracy.  There are two known charged co-conspirators as well as

other unindicted named and unnamed co-conspirators.  The Court concludes that Mr. Brown has

not met his burden to establish a "specific need" beyond "mere speculation that an eyewitness

may have some evidence helpful to defendant's case."  Johnson, 677 F.3d at 143[5] (quoting Jiles,

---

[5] In Johnson, the defendant failed to meet his burden where the confidential informant was an eyewitness to drug
transactions and defendant surmised that, with the informant's identity known, the informant's testimony would

658 F.2d at 197).  Here, Mr. Brown argues that with the informant's identity disclosed, Mr.

Brown will have access to the informant's generic testimony as to the charged crime.  Mr. Brown

does not, however, demonstrate that he has a need for such generic information at this stage of

the proceedings.  Accordingly, because Mr. Brown does not meet his burden to demonstrate a

need for disclosure, the Motion will be denied, without prejudice.

Even had Mr. Brown met his burden to establish a need for disclosure,  such need does

not justify breaking the government's "privilege to withhold from disclosure the identity of

persons who furnish information of violations of law to officers charged with enforcement of that

law."  Roviaro, 353 U.S. at 59.  Mr. Brown relies on the Third Circuit's description of the first of

"three types of cases" that may emerge when applying the Roviaro balancing test:  In Jiles, the

Court described this type of case as one where "the court may be presented with an extreme

situation, such as that in Roviaro itself, in which the informant played an active and crucial role

in the events underlying the defendant's potential criminal liability.  In these cases, disclosure

and production of the informant will in all likelihood be required to ensure a fair trial.  Jiles, 658

F.2d at 196–97.  Despite the Jiles' Court's pronouncement of an "in all likelihood rule," the

Supreme Court in Roviaro clearly stated "that no fixed rule with respect to disclosure is

justifiable."  Roviaro. 353 U.S. at 62.  In Roviaro, the informer was the sole participant, other

than the defendant, in the charged crime.  Roviaro, 353 U.S. at 62.  Here, there are several

alleged participants, some named, others unnamed, who participated in the alleged crime.  Under

these circumstances this case is distinguishable from Roviaro in that the informer is not a "sole"

participant in the charged crime with the defendant.  The Court finds that disclosure of the

---

support a mistaken-identity defense.  Johnson, 677 F.3d at 143.  The Third Circuit found the defendant's need for
disclosure to be speculative, noting that an Officer was also on the scene during the two drug transactions.  Id.

confidential informant's identity is not warranted when balanced against the public's interest in protecting the flow of information against Mr. Brown's right to prepare his defense. Accordingly, Mr. Brown's Motion to Reveal Identity of Confidential Informant is DENIED, without prejudice.

## VII.    Motion to Preserve Law Enforcements' Rough Notes

Finally, Mr. Brown requests that the Court order all government agents and state and local law enforcement officers who participated in the investigation of this case (and the arrest and questioning of Mr. Brown) retain and preserve their rough notes. Mr. Brown also requests production of such notes thirty days in advance of trial.

The government states that it has advised the law enforcement officers involved in the investigation of this case to preserve their rough notes.  Independent of the government's direction to its officers to retain such material, the United States Court of Appeals for the Third Circuit requires the government to retain rough notes and writings.  In United States v. Vella, 562 F.2d 275 (1977) the Court of Appeals held that "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant under the rule in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Jencks Act." Id. at 276.  In United States v. Ammar, 714 F.2d 238 (3d Cir. 1983), the Court of Appeals expanded the category of what must be retained to include rough reports; holding that "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." Id. at 259. In Ammar, the Court acknowledged that a rough draft is not necessarily a Jencks Act statement until it is refined to the point where a finding can be made that the witness has "adopted or

approved" the rough draft as a statement, such as where a law enforcement official presents a handwritten draft to a supervisor. Id. Mr. Brown's request for an Order directing the government to retain rough notes relating to law enforcement officer's investigation in this case will be granted.

The Motion will be denied, as premature, with respect to Mr. Brown's request that the Court order the government to produce rough notes at thirty days prior to trial. Mr. Brown is entitled to the production of rough notes that fall within the purview of Brady and Giglio, or the Jencks Act. The government appears to be aware of its obligations to produce rough notes to the extent such falls within the purview of Brady exculpatory material. The Court concludes that it is premature to produce Giglio impeachment material as such early disclosure may endanger the witnesses. The government shall provide rough notes that are Giglio impeachment material in sufficient time for defense counsel to make effective use of the material at trial (while not prematurely identifying a government witness). To the extent any rough notes fall within the Jencks Act, the government is encouraged to produce such material in sufficient time for its effective use at trial so that it will not result in a delay of the trial, or delay during the trial.

Accordingly, Mr. Brown's Motion to Preserve Law Enforcement's Rough Notes is GRANTED as to the preservation of rough notes. The government is ordered to preserve rough notes consistent with this Opinion and its obligations under Vella and Ammar. The Motion is DENIED, as premature, as to the production of any rough notes not deemed Brady material.

## VIII.   Conclusion

In summary, and for the reasons stated above, Mr. Brown's Motions are resolved as follows.  The Motion for a Bill of Particulars, ECF No. 122, is DENIED.  The Motion for Production of Exculpatory Evidence and Impeachment Evidence, ECF No. 123, is DENIED, without prejudice. The Discovery Motion, ECF No. 124, is DENIED, without prejudice.  The Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609, ECF No. 128, is GRANTED in part.  The Motion for a Pretrial James Hearing, or, in the Alternative, for an Order Compelling the Government to Make a Pretrial Proffer, ECF No. 129, is DENIED, without prejudice, as premature.  The Motion to Reveal Identity of Confidential Informant, ECF No. 130, is DENIED, without prejudice.  The Motion to Preserve Law Enforcements' Rough Notes, ECF No. 131, is GRANTED in part and DENIED in part.

Trial in this matter has been set for March 20, 2023.  An Initial Video Pretrial Conference is hereby set for February 10, 2023 at 9:00 AM.

IT IS SO ORDERED.

Dated: January 27, 2023

Marilyn J. Horan
United States District Court Judge

17